Herrick, J.
This is an appeal by Caroline J. Dewey from the decision of the surrogate in settling the accounts of George E, Barber and Martin Y. B. Stetson, as executors of the estate of Silas H. Dewey, deceased. Silas H. Dewey, about a year prior to his death, made and executed his will, in which, among other things, are the following provisions : “ Third. I give, devise and bequeath to my said wife, Caroline J. Dewey, the interest upon the sum of twelve thousand dollars, to be paid to her annually during the period of her natural life by my executors hereinafter named; said sum to be in lieu of her dower interest in my real estate. Fourth. I direct my executors to pay to my sister, Almira Sawyer, during the term of her natural life, a sum sufficient for her support and maintenance, and suitable to her condition and circumstances in life ; such sum to be determined by my executors. Sixth. I give, devise and bequeath all the rest, residue and remainder of my property, after the payment of the legacies, charges, bequests and devises hereinbefore mentioned, to my daughter, Elizabeth E. Barber, wife of George Edward Barber, and, in case of her death before my own, to the heirs of her body. Seventh. I hereby designate and appoint, as my executors to carry the provisions of this will into effect, Martin Y. B. Stetson, of Champlain, H. Y., and George Edward Barber, of Plattsburgh, H. Y, with leave to sell or dispose of my real and personal property, not otherwise disposed of, as in their judgment may-seem best.”
• It the time of his death the testator was substantially out of debt. He owned a farm of over 200 acres, for which it appears he had been offered the sum of $11,000 about the time of the making of his will; his stock and farm implements were of the value of about $2,200; and he also owned mortgages to the amount of about $3,300. His- family consisted of his wife, who was of the age of fifty-nine years, his sister, Almira Sawyer, of the age of eighty-one years, and- his daughter, Elizabeth E. Barber. ■ Only a portion of the real estate has ever been sold by the executors. The major portion remains unsold. At no time since her husband’s decease has the widow, the appellant, received the full amount of the interest of $12,000. All that has been paid to her has been the balance of the income arising from the farm and personal property, after deducting taxes, insurance, repairs and various other farm expenses.
A bequest of the interest of a certain sum, not setting aside any fund for its payment, is a gift of an annuity equal to the interest of said sum, and is not chargeable with any tax, expense of management, or other deduction, by the executor. Brimblecom v. Haven, 12 Cush. 511; Swett v. City of Boston, 18 Pick. 123. I have not been referred to any case in this state that is precisely in point. In the case of Whitson v. Whitson, 58 N. Y. 479, the testator’s will read as follows: “I give and bequeath to my be *563 loved wife, Elizabeth 0. Whitson, the life use of the sum of ten thousand dollars, directing my executors to semi-annually pay to her the lawful interest of the said sum of ten thousand dollars, from the day or date of my death ; and, after the decease of my widow, this ten thousand dollars to descend and pass to any heir or heirs my said wife should have by me; and, if no such heir or heirs, I hereby give and bequeath the same to my son, Oliver Whitson.”
Justice Grover, in passing upon that case, used the following language: “ The question in this case is whether the bequest to the respondent was the use and income of ten thousand dollars during her life, or an annuity of seven hundred dollars, payable semiannually, for the same period. If the former, the taxes upon the fund, and expenses of the trust, must be paid out of the income. * * * If the latter, it is equally clear that that sum must be paid to her from the estate, without any deduction on account of taxes imposed upon the fund producing the annuity, but these must be paid out of the estate. There is no conflict of authority upon this,point.”
So, in this case, the question is whether the testator intended to grant to his widow an annuity of $700, payable out of the estate, or whether it was simply the use and income of $12,000. If the first was his intention, then the expenses of managing the estate—the taxes, insurance, cost of repairs to the property—are not to be deducted, and the amount payable to her diminished by the expenses of managing the testator’s estate. In the Whitson Case, it will be observed that a specific sum, of $10,000, was set aside, and it is first provided that the widow shall have the use of that sum; subsequently, it is provided that the executors shall pay to her, semiannually, the lawful interest of the said sum of $10,000; then he provides that this specific sum of $10,000 shall go to his son. It was held there that it was not the intention of the testator to give his wife an annuity of $700 per year, without any abatement for taxes, insurance, etc.; he had given her the use of $10,000. And it would also appear that in that case the testator did not intend that any portion of the principal sum of $10,000 should be used to pay annuity to his wife, because he made a bequest of the whole of that sum, to take effect after the death of his wife. In the case of Delaney v. Van Aulen, 84 N. Y. 16, the testator, after making a few specific bequests, devised all his estate to his executors, in trust, to receive the rents, issues, and profits thereof, and out of such rents, issues, and profits, certain annual sums were to be paid to various beneficiaries. In the case of Pierrepont v. Edwards, 25 N. Y. 128, the testator, by his will, gave his entire estate to his executors, in trust, directing them to convert into money any of the estate, real or personal, which might be unsafe or unproductive, and invest the proceeds in safe and productive securities, and that, out of the income of the estate thus invested, they should pay the sum of $8,000 to his wife, or, in case the testator should not leave a child or children by her, $7,000, so long as she should remain his widow ; the balance of the income to be divided in equal portions between his brother *564 and two unmarried sisters. The income of the estate in fact fell below $7,000 a year, and the executor was compelled to pay out a portion of it for taking care of unproductive property, and the question there arose whether the executor was compelled to pay the widow her annuity of $7,000, when the income was insufficient. It will be seen that none of these cases are similar to the one at bar, and that no principle can be extracted from them which is decisive of this case. In speaking of the authorities bearing upon the question under consideration, in the casé of Pierrepont v. Edwards, the court said: “ It will be seen, by an examination of them, that no positive rule, of ready application to every case, can be laid down, but that each case will depend upon a consideration of all the material provisions of the-will to be construed, and of the extrinsic circumstances respecting the testator’s family and estate which may be fairly brought to bear upon the question of intent. The leading principle of the cases is that when the testator bequeaths a sum of money—or, which is the same thing, a life annuity—in such a manner as to show a separate and independent intention that the money shall be paid to the legatee at all events, that intention will not be permitted to be overruled merely by a direction in the will that the money is to be raised in a particular-way, or out of a particular fund.”
Provisions in a will, intended for the support of a wife, should receive the most favorable construction to accomplish the purpose intended. Thurber v. Chambers, 66 N. Y. 42; Slimson v. Vroman, 99 N. Y. 80. The language of the will, together with the circumstances of the testator and of his estate, lead me to the view that he intended to grant to his wife an annuity of $700 a year. He had not set aside any portion of his estaté which was to produce such annuity, as in the case of Whitson v. Whitson. Neither did he provide that it should be payable out of the income of his estate, as in the case of Delaney v. Van Aulen. It was not to be drawn from any specific source, nor was any specific sum set apart to produce it. His whole estate was given into possession of his executors, and the primary purpose to be accomplished by them was the payment of this annuity to the widow. The sum of $12,000 was not set apart, but it was simply used as a measure of the amount of the annuity to be paid to her. The will does not provide for the paying over this $12,000 to any one else upon the death of the widow, as in the Whitson Case, but bequeaths all the residue of his property, “ after the payment of the legacies, charges, bequests and devises hereinbefore mentioned.” And these bequests and charges consist in a direction to pay his sister, who was then 81 years of age, a sum sufficient for her support and maintenance, and the legacy of $200 to a grandnephew. His estate, he had every reason to believe, would amount to more, by not an inconsiderable sum, than $12,000. His wife was somewhat advanced in years; he had but one child, married, living with her husband; and it was but natural that his first thought should be for the care and comfort of his wife, during her widowhood. He measured the amount that he judged necessary for maintaining her, and, if necessary to comply with that intention, the principal of the estate, I think, *565 under the circumstances, may be resorted to. Neither is that annuity subject to decrease by the taxes and expenses of maintaining the estate ; so that the whole sum of $12,000 may be kept intact for the residuary legatee. She is to have a sum equivalent to the interest on $12,000, payable out of the estate,—not out of the income alone. There is no direction to the executors to preserve any particular sum for the residuary legatee, but only what is left after providing for his sister, paying the legacy of $200, and theannuitytohis widow. In the case of Pierrepont v. Edwards, supra, the court said: ‘Tf we were to hold that the widow was to have nothing unless the property or securities in which the estate happened to be invested yielded income, and that she was not to be paid the full seven thousand dollars per annum directed to be paid to her, unless the investment should happen to yield that sum, .we should, in my opinion, sacrifice the substance and primary intention of the will l'or the sake of an incidental provision inserted for the convenience of the estate, and not intended to limit or control, or to render uncertain or conditional, the provision in her favor.”
The other objections of the appellant to the decree are not sustained, but for the errors indicated in this opinion the decree of the surrogate is reversed, and a rehearing ordered, with costs of this appeal to be paid out of the estate.
All concur.